**Mary JONES, et al., Appellants,**

v.

**HEALTH RESOURCES CORPORATION OF AMERICA, Appellee.**

**No. 84–1606.**

District of Columbia Court of Appeals.

Argued Nov. 6, 1985.

Decided May 27, 1986.

David B. Lamb, Washington, D.C., for appellants.

Steven K. Hoffman, with whom Susan L. Carney, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, BELSON and ROGERS, Associate Judges.

ROGERS, Associate Judge:

This is an appeal from denial of a motion to set aside a judgment for possession and rent due on premises at 1420 16th Street, N.W., Washington, D.C. The record reveals that appellants filed the motion promptly upon discovery of the entry of judgment in their absence, that appellants

offered some evidence of their good faith, and that appellee had regained possession of the premises. In addition, the judgment for possession and money damages was void since appellants had entered their appearance through counsel and appellee failed to present prima facie evidence of appellants' liability when appellants failed to appear for trial. Accordingly, we reverse and remand.

## I

On August 1, 1983, appellee, Health Resources Corporation of America, Inc. (HRC), entered into a written sublease agreement with "Law Officecom, Inc." for the remaining term of HRC's lease with a third party for the premises in question. Appellant Joseph M. Durso signed the lease as President of Law Officecom, Inc. On August 3, 1983, Law Officecome, Inc. filed a Certificate of Incorporation with the Secretary of State of Delaware. On August 29, 1983, Law Officecom, Inc. filed an Application for Certificate of Authority to transact business in the District of Columbia with the District of Columbia Record of Deeds.[1] On November 28, 1983, appellant Jones, writing as President of Law Officecom, Inc., sent a letter enclosing a check for $2500 to Don Costa, manager of accounting for HRC, as a rental payment. Apparently Law Officecom, Inc. tendered no other rental payment to HRC under the sublease.

After five months of nonpayment of rent by Law Officecom, Inc., Mr. Costa, HRC's manager of accounting, entered into settlement discussions with appellants in March 1984. By letter of March 20, 1984, he notified them of the default by Law Office-

com, Inc., as a result of rent arrearages of $37,500, and advised that failure to cure the default within thirty days would result in eviction. He also offered to offset the rent arrears with a credit for the office telephone system which Law Officecom was obligated to purchase under the sublease.[2]

On June 7, 1984, HRC filed suit in Superior Court against appellants Jones and Durso "T/A Law Officecom, 1420 16th Street, Inc." for possession of 1420 16th Street and money damages of the rent arrearages, $72,500. A trial was set for June 25, 1984. On that date, Charles Acker, Esq., appeared for appellants before Judge Mencher. He explained that he had recently been retained and asked for a continuance. Judge Mencher continued the case for one week, to July 2, 1984, and entered a protective order requiring appellants to post a bond of $2500 by June 26, 1984.

On July 2, Mr. Acker advised Judge Greene that appellants had not kept an appointment with him following the June 25 proceedings and that he had been unable to contact appellants despite attempts to do so.[3] He was, therefore, unable to file an answer to the complaint, to explain why the protective order payment had not been made or to make further representations. In response to Judge Greene's comment that he was inclined to grant HRC judgment for possession, Mr. Acker stated that he could not consent or oppose the entry of judgment. Judge Greene thereupon granted judgment to HRC for possession of the premises and $72,500.

On July 13, 1984, Michael Riselli, Esq., filed a motion on behalf of appellants for a stay of execution to avoid eviction from

1. Both Durso and Jones are listed in the application as directors and officers of the corporation and signed the application in their official capacities: Durso is designated President, Vice-President, and Treasurer, and Jones is designated Secretary.

2. The sublease only obligated Law Officecom, Inc. to purchase the telephone system at a cost not exceeding $18,000. The purchase price for the system was then $66,602. Hence Mr. Costa's

offer of a credit for $48,602 (the amount over $18,000), which the corporation was not obligated to pay, was not advantageous to appellants since the recent arrearages were only $37,500.

3. Mr. Acker's attempts between June 25 and July 2, 1984, to contact appellants following Judge Mencher's ruling on June 25, 1984, are set forth in his affidavit, which was attached to HRC's opposition to appellants' motion to set aside the default judgment.

1420 16th Street on July 16, 1984. A hearing was held by Judge Greene on July 16, 1984. Mr. Riselli argued that the complaint for possession should have been served upon the corporate entity, Law Officecom, Inc., and not upon Durso and Jones as individuals since the suit was based on a lease between HRC and Law Officecom, Inc.; thus Law Officecom, Inc. had never been properly served.[4] He also advised the court that appellants had not paid the rent because they claimed to have had a good faith belief there was going to be a modification of the rental term. Appellants were ready and willing to pay the protective order, according to Mr. Riselli, who advised appellants "apparently" had not received notice of the order from their prior counsel. Judge Greene denied the stay of execution, observing that appellants had done "everything they can to evade their responsibilities under this case."

On July 31, 1984, appellants filed through present counsel a motion to set aside the default judgment on the grounds that (1) the money judgment entered against them individually properly ran against Law Officecom, Inc., because the lease agreement was between HRC and Law Officecom, Inc.; (2) HRC's settlement offer of March 20, 1984, constituted a novation sufficient to transfer liability from Jones and Durso to the corporation;[5] and (3) Jones, Durso, and Law Officecom, Inc. had not received notice of the July 2, 1984 hearing, were acting in good faith in seeking to set aside the judgment, had valid defenses individually against the judgment

(based upon the lack of any legal ground to enter personal judgments or to pierce the corporate veil), and were acting promptly in seeking to set aside the judgment.[6] HRC opposed the motion, arguing that the judgment was not a default judgment but a "standard" judgment which properly ran against Jones and Durso personally since Law Officecom had not been incorporated at the time Durso signed the lease, and that appellants were not entitled to relief under Super.Ct.Civ.R. 60(b).

Judge Shuker heard argument on the motion on September 25, 1984. He agreed to allow testimony on the issue of notice only, and asked that the transcripts of the proceedings before Judge Greene be submitted to him. Joseph Durso testified that he had been President of Law Officecom, Inc. since its inception on August 3, 1983, and that he had never received any kind of notice that the complaint would be heard on July 2, 1984. He claimed he had only become aware of the July 2 judgment on July 5 when he had called Law Officecom's attorney, Mr. Buffington, on another matter.[7] He further explained that on the day he had been served with HRC's complaint, it had been agreed with Mr. Buffington, who would contact Mr. Acker, that a continuance of several weeks should be obtained to allow time to prepare a defense. On instruction of Mr. Buffington, he (Durso) had not appeared in court on June 25. He also testified that he had never purported to act individually on behalf of Law Officecom. On cross-examination, Durso

---

4. HRC's counsel responded that she was unaware until recently that appellants were incorporated, having previously found no record of their incorporation of license to do business in the District of Columbia. She offered to amend the complaint to add Law Officecom, Inc. as a party under Super.Ct.Civ.R. 15(c), while also noting that Jones and Durso were officers of the corporation and both had been personally served. Super.Ct.Civ.R. 4(d)(3).

5. This argument is not pursued on appeal.

6. Attached to the motion was a memorandum of points and authorities, copies of the lease, the application for a certificate to do business in the

District of Columbia, and the March 20, 1984, letter from Mr. Costa, and Durso's affidavit.

7. Durso testified that appellants had retained Mr. Buffington to represent Law Officecom, Inc. in connection with HRC's complaint, but because he was unfamiliar with landlord and tenant law, he had recommended Mr. Acker. Mr. Buffington had later advised appellants that Mr. Acker was going on vacation and recommended Mr. Riselli as counsel. Durso also testified that Mr. Buffington had been paid $2500 to represent the corporation in the instant case, and that all of the attorneys had been paid. This was corroborated by Mary Jones' testimony.

testified he had not signed the lease until Law Officecom was incorporated, explaining that the lease had been back dated to August 1, as "a favor" to HRC. On redirect examination, he testified the lease had been signed on August 17, 1983.

Mary Jones testified that she had a position with Law Officecom, Inc. since its inception on August 3, 1983, and had no notice of the July 2 trial. She had thought Mr. Acker would obtain a continuance of several weeks to give them time to prepare a defense, but she, like Durso, admitted that she had not gone to a meeting scheduled with Mr. Acker nor attempted to contact him after the June 25 proceeding. She claimed that they had forgotten about the meeting in the course of attending to other matters and had assumed there was sufficient time to get together with him another time. She also admitted representing Law Officecom, Inc. in the settlement negotiations with HRC.[8]

Judge Shuker denied appellants' motion on October 26, 1984. He found that (1) Durso's signature on the lease between Law Officecom, Inc. and HRC on a date prior to Law Officecom's incorporation rendered him personally liable on the contract; (2) Jones subsequently ratified the lease by making the sole rent payment and by representing Law Officecom in settlement negotiations, and thus became a co-promoter with Durso; and (3) no novation had been entered into to extinguish their personal liability. He also found that both appellants had received actual notice of the July 2 proceeding as a result of being personally served with a copy of the complaint, had not presented a prima facie adequate defense to the complaint, and had not demonstrated any good faith in the course of the proceedings, and that HRC would be seriously prejudiced were the motion to be

granted due to its primary liability under the lease.

## II

The errors assigned by appellants resolve into one issue: did Judge Shuker abuse his discretion in failing to set aside the judgment entered by Judge Greene on July 2, 1984. Although appellants did not designate the rule under which they filed their motion to set aside the July 2 judgment, it is properly treated as a motion under Super.Ct.Civ.R. 60(b).[9] *Lynch v. Meridian Hill Studio Apts.*, 491 A.2d 515, 518 (D.C.1985) ("Rule 60 designated to provide relief for a mistake which could not have been avoided through diligence of counsel"); *Wallace v. Warehouse Employees Union # 730*, 482 A.2d 801, 804 (D.C. 1984) (motion under Rule 60(b) requests consideration of additional circumstances). Super.Ct.Civ.R. 60(b) allows relief from a final judgment, order, or proceeding on the basis of mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud; a void judgment; a judgment which has been satisfied, released, or discharged, or for any other reason justifying relief from the operation of the judgment. Relief is more readily granted for matters of excusable neglect, Super.Ct. Civ.R. 60(b)(1). *Day v. United Securities Corp.*, 272 A.2d 448, 451 (D.C.1970). Motions under Rule 60(b)(1), (2) and (3) must be made within one year, but no time limit is set for motions under Rule 60(b)(4) regarding void judgments. *Alexander v. Polinger*, 496 A.2d 267, 269 (D.C. 1985) (citations omitted). Where relief is sought under the more stringent standard of Rule 60(b)(6), the movant must be able to show the existence of "extraordinary circumstances excusing failure to proceed." *Day v. United Securities Corp., supra*, 272

---

8. Jones also testified that in connection with curing the default on the lease, "we had worked some things out or were trying to work some things out with [HRC] regarding the purchase of a telephone system and were talking to AT & T and a couple of other people, we were trying to put that together." *See supra* note 2.

9. Superior Court Civil Rule 60(b) is identical to Rule 60(b) of the Federal Rules of Civil Procedure, except the local rule deletes the reference to 28 U.S.C. § 1655 relating to lien actions in federal court.

A.2d at 451; *Starling v. Lawrence & Associates,* 495 A.2d 1157, 1161 (D.C.1985).

In determining whether to grant relief under Rule 60(b)(4), the trial court must consider whether the movant (1) received actual notice of the proceeding; (2) acted in good faith; and (3) acted promptly upon discovery of the judgment.[10] The court must also consider whether prejudice to the nonmoving party would result. *See Clark v. Moler,* 418 A.2d 1039, 1043 (D.C.1980); *Dunn v. Profitt,* 408 A.2d at 993. Our standard of review is for abuse of discretion. *Lynch v. Meridian Hill Studio Apts., supra,* 491 A.2d at 517. Upon review of the record we hold that Judge Shuker abused his discretion in denying appellants' motion. Although the balance of the four factors is in some respects close, we conclude that when all the circumstances are considered, the balance tilts decisively in appellants' favor. The fact that a large, and obviously void money judgment was entered against appellants is, we think, an important circumstance. The entry of such a judgment is a heavy price to pay for failing to cooperate with counsel regarding a date in Landlord and Tenant court.

The record supports Judge Shuker's finding that appellants had actual notice of the July 2 proceedings. They were served with process, and the only reason they were not present in court was their failure to keep appointments with counsel and to return his telephone calls.[11] Regarding appellants' good faith, Judge Shuker's finding is supported by evidence that appellants did not comply with the protective order, failed to communicate with their attorney, and, arguably, failed to appear in court on either of two trial dates. On the other hand, the record also reveals that appellants had promptly retained counsel upon receiving HRC's complaint and through substitute counsel, Mr. Acker, had sought to obtain time to prepare their defense. Although appellants' testimony that they had forgotten a meeting with Mr. Acker is hardly a convincing explanation of why they also failed to return his messages, *see supra* note 3, their behavior was consistent with their understanding that they would have several weeks to prepare a defense. In addition, appellants clearly acted promptly by filing a motion to vacate the judgment. Any prejudice to HRC by further delay would be limited to the time and expense of additional proceedings since it had regained possession of the premises, and appellants were ready to post a bond. Moreover, on July 2 Judge Greene was without authority to enter a judgment against appellants except upon proof of liability and damages.

HRC does not dispute that Mr. Acker entered an appearance on behalf of appellants at the June 25 proceeding before Judge Mencher.[12] In *District of Columbia Transit System, Inc. v. Young,* 293 A.2d 488 (D.C. 1972), this court held that where a party has entered an appearance, the party seeking relief must establish both liability and damages.

> One who has knowledge of a definite date for trial must know that if he fails

> If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

---

**10.** A prima facie showing of a meritorious defense is not required when a motion to vacate is made on the basis that the judgment is void. *Alexander v. Polinger, supra,* 496 A.2d at 269; *Colbert Refrigeration Co. v. Edwards,* 356 A.2d 331, 333 (D.C.1976).

**11.** That neither appellants nor their attorney had notice that on July 2 HRC would seek a default judgment, Super.Ct.Civ.R. 55(b)(2), is irrelevant to our holding that Judge Shuker's finding of actual notice of the trial date is supported in the record. The July 2 judgment was not a default judgment. Rule 55(b)(2) provides in part:

**12.** We find no record that Mr. Acker filed a praecipe entering his appearance. Super.Ct. Civ.R. 101(b)(1); L & T R. 2. On both occasions when he was in court, however, the presiding judge and counsel for HLC treated him as representing appellants.

<br>

to appear ready for trial he runs the risk of the trial proceeding without him, or even of having judgment entered against him where there is a verified complaint. A defendant who appears on the trial date but refuses to proceed is not in much better position than one who fails to appear. However, a default should not have been entered since the defendant had answered. As he was not in default in pleading, a confession of liability cannot be inferred and the plaintiff must be put to his proof.

*Id.* at 489.

▮▮▮ HRC was not entitled to judgment on the basis of the verified complaint or Mr. Acker's failure to oppose the entry of judgment.[13] In *District of Columbia Transit System, Inc. v. Young, supra,* 293 A.2d at 490, the court suggested that a verified complaint along with the plaintiff's deposition might have sufficed to make out a prima facie case of liability. More recently, we have clarified when such action is appropriate. In *Milton Properties v. Newby,* 456 A.2d 349, 354 (D.C.1983), the tenant contended that the landlord's verified complaint and the tenant's counterclaim constituted sufficient proof to entitle her to judgment on the counterclaim. The court rejected this contention on the grounds that the tenant had failed to call the trial court's attention to the contents of the verified pleading in an effort to prove liability or damages, and that "the contents of the verified pleadings are so conclusory

in nature that they would not have sufficed as such proof." *Id.* at 354. Both circumstances are present in the instant case: neither Judge Greene nor HRC referred to the verified complaint or to any evidence as proof of appellants' liability, and the verified complaint was set forth in a conclusory fashion on L & T Form 1. Nor was Mr. Acker's statement that he could neither consent nor oppose the entry of judgment tantamount to a consent to judgment by appellants; his remark was premised on the absence of information about appellants' defenses and did not infer that he was, nevertheless, authorized to waive their right to put HRC to its proof.

▮▮▮ On July 2, two alternatives were available to Judge Greene: he could either grant appellants another continuance or proceed to trial. *See* L & T R. 12(b).[14] Had he declined to grant a continuance and had appellees presented a prima facie case of appellants' liability, Judge Greene could have entered a judgment on liability for HRC. But in the absence of such evidence, he was without authority to enter judgment for appellees and hence the July 2 judgment was void. *Alexander v. Polinger, supra,* 496 A.2d at 269 (citing *VTA, Inc. v. Airco, Inc.,* 597 F.2d 220, 224 (10th Cir. 1979) (judgment void if court without power to enter it)). Since the July 2 judgment was void, appellants were entitled to relief under Rule 60(b)(4) without presenting prima facie evidence of an adequate defense.[15]

---

13. Under Landlord & Tenant Rule 5(a), appellants were not required to, and did not, file an answer to HRC's complaint.

14. L & T Rule 12(b) provides:
*Trial.* Should the parties fail to settle the controversy, the Court shall proceed with a trial on the merits of the case. The parties shall be sworn and the Court shall conduct the trial informally and in such manner as to fully elicit all matters of defense and all facts in the case which will enable the Court to arrive at a just decision on the merits.

15. There is, however, evidence in the record which suggests that Jones and Durso presented prima facie adequate defenses: Jones that she was not a co-promoter, and Durso that he had acted on behalf of a corporate entity when he

signed the lease. *Clark v. Moler, supra,* 418 A.2d at 1043, citing *Fireproofing, Inc. v. Wagman Construction Corp.,* 383 F.2d 249 (4th Cir.1967) (construing Fed.R.Civ.P. 60(b)). A promoter, although assuming to act on behalf of a projected corporation and not individually, will be held personally liable on contracts made for the benefit of a corporation which the promoter intends to organize. *Robertson v. Levy,* 197 A.2d 443, 447 (D.C.1964) (before certificate of incorporation is issued individuals and not corporations are liable on contracts made on behalf of the corporation); *Productora E. Importada De Papel, S.A. De C.V. v. Fleming,* 376 Mass. 826, 383 N.E.2d 1129, 1136 (1978); *Refrigeration Engineering Co. v. McKay,* 4 Wash.App. 963, 486 P.2d 304, 310 (1971). The evidence before Judge Shuker did not show that Jones had entered

*Id.* at 269; *Colbert Refrigeration Co. v. Edwards, supra,* 356 A.2d 331.

This court has held frequently that it will reverse for only a slight abuse of discretion in denying relief from the entry of a default judgment. *E.g., Clark v. Moler, supra; Dunn v. Proffit, supra.* We think that the same standard should apply in a case like this, where the court entered, not a default judgment, but a judgment that was void because it was entered without evidence of liability or damages. Accordingly, since we hold that Judge Shuker abused his discretion in denying appellants' motion to vacate the July 2 judgment, we reverse and remand the case to the trial court for trial.

*Reversed and remanded.*

into a relationship with Durso prior to Law Officecom, Inc.'s incorporation, and the evidence of her post-incorporation actions was insufficient to establish that she was a co-promoter. *See Post v. United States,* 132 U.S.App.D.C. 189, 198 n. 51, 407 F.2d 319, 328 n. 51 (1968) (definition of a "promoter.") *See also, e.g., Malisewski v. Singer,* 598 P.2d 1014, 1015 (Ariz.App.1979) ("Those who take an active part in organizing the corporation prior to its coming into being are called promoters of the corporation"); *Stap v. Chicago Aces Tennis Team, Inc.,* 63 Ill.App.3d 23, 20 Ill.Dec. 230, 379 N.E.2d 1298 (1978) ("in a comprehensive sense 'promoter' includes those who undertake to form a corporation and to procure for it the rights, instrumentalities, and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business"); *Schuette v. Winternitz,* 498 P.2d 1183, 1185 (Colo. 1972). As to Durso, appellees did not offer evidence to rebut his testimony that the lease was signed after Law Officecom, Inc. was incorporated. *See Robertson v. Levy, supra,* 197 A.2d at 447.