Matthew **LYONS**, et al., Appellants,

v.

Alvin **JORDAN**, et al., Appellees.

No. 85–1153.

District of Columbia Court of Appeals.

Argued Jan. 27, 1987.
Decided May 1, 1987.

Eric J. Sanne, with whom Michael E. Brand, Washington, D.C., was on brief, for appellants.

Richard S. Stern, Washington, D.C., for appellees.

Before NEWMAN, FERREN and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Appellants seek reversal of a default judgment entered against them as a discovery sanction. Appellants further allege that the trial court denied their right to participate in the hearing on damages and that appellees were not entitled to an award of punitive damages. We affirm.

## I.

This case arose from the sale of an apartment building by the Lyons, appellant-defendants, to the Jordans, appellee-plaintiffs. The Jordans sued for breach of contract and fraud, alleging that the Lyons failed to make agreed repairs and to disclose outstanding housing code violations and a pending proceeding by the tenants of the building against the Lyons before the D.C. Rental Accommodations Office based on such violations. As a result of the proceedings, some tenants were given the right to withhold rent payments and the building was lost by the Jordans through foreclosure. This case never went to trial. The issues on appeal arise from the entry of a default judgment during the pretrial discovery process and the subsequent hearing on damages.

Appellees first served interrogatories and requests for production of documents in October 1982 and February 1983. Asserting that no response of any type had been made to the request for documents and that the answers to the interrogatories were deficient, appellees filed their first motion to compel on January 26, 1984, clearly setting forth the manner in which the answers to six interrogatories had been inadequate. Appellees' motion, contested by appellants, was granted by the trial court on February 15, 1984, including an award of reasonable attorney's fees. The court ordered the parties to work the matter out within 20 days. Appellants' attorney soon thereafter moved to withdraw due to appellants' repeated lack of cooperation with appellees' discovery requests and was so granted permission by the trial court. In the pretrial order of August 6, 1984, appellants were again ordered to comply with the discovery requests within 30 days.

In November 1984, appellees moved for sanctions for failure to comply with the previous orders, stating that appellants' new counsel (who had entered his appearance on June 13, 1984) had been provided with copies of the unanswered discovery requests. The motion also stated that no additional answers to interrogatories had been furnished and that the documents that had been provided (without court filing) were incomplete. No opposition was filed by appellants. The court granted this motion and awarded $150 in attorney's fees. Compliance was still not forthcoming. On January 28, 1985,[1] asserting that appellants had "blatantly disregarded" the orders of the court, appellees again moved for sanctions, including a conditional request for default. Appellants again filed no written opposition although they contested the entry of default at the hearing on the motion held on April 9, 1985. The court questioned appellants' counsel on the history of the case and his efforts to comply, heard from appellees and ordered a default judgment entered.

A hearing for proof of damages was held in July 1985, at which appellants' counsel was permitted to cross-examine appellees' witness and argue to the court. The court awarded appellees $10,000 on the breach of contract claim, and $1,000 in compensatory damages plus $9,000 punitive damages on the fraud claim.

## II.

Under Super.Ct.Civ.R. 37, the decision to impose discovery sanctions is left to the "broad discretion" of the trial court. *Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 687 (D.C.1983). We will reverse only if the trial court abuses its discretion by imposing a penalty too strict or unnecessary under the circumstances. *Braxton v. Howard University,* 472 A.2d 1363, 1365 (D.C.1984); *see also Hinkle v. Sam Blanken & Co.,* 507 A.2d 1046, 1048 (D.C.1986). We have held that before entering a default judgment as a sanction, the trial court must: 1) inquire into the nature of the noncompliance; 2) evaluate the prejudice to the moving party; 3) consider alternative, less harmful sanctions; and 4) recognize the societal preference for a decision on the merits. *Shimer v. Edwards,* 482 A.2d 399 (D.C.1984). Appellants contend that the trial court failed to correctly apply the four-prong *Shimer* test. We hold that *Shimer's* requirements were met and that entry of a default judgment was not an abuse of discretion. We discuss each of the criteria in turn.

We hold that the trial court's examination of the record and questioning of appellants' second counsel at the hearing was sufficient to establish that the nature of the noncompliance was willful.[2] The trial judge observed that there were three prior orders to compel and that appellants' first counsel had successfully moved to withdraw due to appellants' noncooperation. In fact, appellants' counsel at the hearing essentially admitted that appellants were loath to comply.[3] Furthermore, appellants' argument that there was substantial compliance with certain discovery requests ignores the fact that each motion, including the last, dealt with appellees' request for specific categories of documents and six specific interrogatory answers. Appellants made no attempt to show that this information was unavailable or privileged and cannot now avoid the consequences of repeated failures to obey court orders by pointing to other areas of compliance.

1. The trial was scheduled to begin on February 13.

2. Although a finding of willfulness is not required as a basis for dismissal or default judgment under Rule 37, it is still a factor to be considered in the court's choice of sanction. *Ungar Motors v. Abdemoulaie, supra,* 463 A.2d at 688 n. 9.

3. The following colloquy took place:

> THE COURT: He [the prior attorney] withdrew because his clients, your clients, wouldn't cooperate with him.
> MR. MICHAEL: Well, there's a lot of that that's true, your Honor. I have a very difficult time to get Mr. Lyons to cooperate, but I think that he has cooperated.

The court later observed: "[C]ounsel you're not being accused of being uncooperative, your clients are."

The prejudice requirement was also met. The areas in which appellees were seeking production of evidence included: inspections and repairs made to the property while owned by appellants, representation of appellants by a prior law firm relating to problems involving the property, discussions about the need for repairs, and statements from tenants in the building with respect to issues in the litigation. This evidence was important to appellees' fraud and contract claims.[4] Appellees' attorney stated he needed the material for trial and this remark was never contested by appellants. In this case, delay in excess of two years was but one factor in the prejudice calculus. Appellees' need for the information to press his claim for redress for loss of his investment and the burden of continuous resort to court process to enforce discovery satisfies the prejudice test; thus, appellants can find no refuge in the facts of *Braxton v. Howard University, supra.*[5]

Under the third prong, appellants point out that in *Ungar Motors v. Abdemoulaie, supra,* 463 A.2d at 689, we stated that: "While a trial court is not required to state its reasons for choosing dismissal or a default judgment rather than some lesser sanction, a court which fails to state any reason at all runs a serious risk that its decision will not withstand appellate scrutiny." Although it is true that in this case the trial judge did not explicitly consider lesser sanctions, she did orally review the record noting the previous failures to comply, the court orders to compel (including the Feb. 15, 1984 order and the pretrial order), and the imposition of attorneys' fees on appellees' previous motion for sanctions. Thus, the court was aware that previous court orders, including the lesser sanction of attorneys' fees, had been entered without effect. We conclude that the failure to explicitly explain the rejection of lesser alternatives does not warrant reversal here. *See Hinkle v. Sam Blanken & Co., supra,* 507 A.2d at 1049. Lastly, we conclude that the trial court did not disregard the preference for adjudication on the merits; to the contrary, appellants had been given every opportunity to comply over a period of two and one half years, choosing instead to disregard three previous court orders at their peril. The fact that the trial judge acquiesced in counsel's characterization of her decision as "harsh" is irrelevant to whether it was justified. Upon our review of the record, we hold that the trial court's order was not an abuse of discretion.[6] *Himmelfarb v. Greenspoon,* 411 A.2d 979 (D.C.1980); *Coleman v. Lee Washington Hauling Co.,* 392 A.2d 1067 (D.C.1978). The default judgment is affirmed.

### III.

Appellants also contend that they were denied their fundamental right to participate in the hearing on damages. We disagree. Appellants' argument overstates

---

4. Appellant argues that our holding in *Jones v. Health Resources of America,* 509 A.2d 1140 (D.C.1986), requires that a plaintiff must establish a prima facie case of defendant's liability, as well as damages, and therefore default as a Rule 37 sanction may be entered only to the degree that withheld discovery material was essential to the establishment of such liability. *Jones,* however, was dealing with a situation where the trial court had no power to enter a judgment without proof of liability, and the judgment therefore was "void." In the case before us, Rule 37 expressly empowers the trial court to enter a default as a possible sanction.

5. Indeed, in *Hinkle v. Sam Blanken & Co., supra,* 507 A.2d at 1050, we reasserted the proposition recognized in *Braxton,* that "willfulness alone, even without a showing of prejudice can warrant dismissal, especially where, as here, there has been an order compelling discovery."

6. Appellants note that in appellees' final motion for sanctions which is the subject of this appeal and at the hearing on that motion, appellees did not ask for an immediate default. In that motion they requested a default if compliance was not had within 10 days of trial. Furthermore, at the hearing appellees reiterated that they were willing to grant appellant 20 days grace. Therefore, appellants claim that the imposition of an immediate default by the court, sua sponte, was an abuse of discretion. This argument is not persuasive. The issue of sanctions including default under Rule 37 was before the court. Appellants cannot avoid the default merely because appellees were timid in their request. As long as the sanction is supported by the record, the trial court is free to use its discretion to fashion the remedy it believes in its judgment is appropriate for the case.

their rightful position on both the facts and the law.

■ At the beginning of the hearing, appellants' counsel stated that appellant, Mr. Lyons, would not be able to be in court until later in the morning and requested a continuance until that time. The trial judge denied the request and stated:

> THE COURT: See, in this case on April 9th, a default against the defendant was entered. The counter-claim was dismissed and this matter was set for ex parte proof for today....

At the end of the hearing, the trial court asked appellants' counsel if he wished to be heard. Counsel responded:

> MR. MICHAEL: I have nothing to add, sir, other than my—I don't think the plaintiffs are entitled to punitive damage. I think—well, I can't argue since there is no evidence to put in because my client is not here.
>
> THE COURT: Well, it's because a default has been taken against him.
>
> MR. MICHAEL: That's correct.

Appellants now contend that the above comments amounted to an erroneous court ruling as a matter of law that appellant, Mr. Lyons, had no right to be at the hearing as it was an ex parte matter.[7] This interpretation of the trial court's somewhat ambiguous remarks is belied by the record. Appellants' counsel was in fact permitted to cross-examine appellees' witness. When the court asked if appellants' counsel wished to be heard, Mr. Michael offered no argument nor proffered any testimony. He merely noted an asserted inability to argue in Mr. Lyons' absence.[8] The trial judge's actions indicate that he understood appellants' right to participate. Appellants' counsel was offered the opportunity for meaningful participation in the hearing. Furthermore, given that the trial court's comments were perhaps ambiguous, at least on a cold record, it was appellants' responsibility to make their record for appeal. In this posture, we will not reverse for a possible misstatement of law that did not appear to affect appellants' substantive rights.

■ The only issue, therefore, is whether the trial court abused its discretion in denying the continuance requested at the beginning of the hearing. *Harris v. Akindulureni*, 342 A.2d 684, 686 (D.C.1975) (motion for continuance committed to sound discretion of trial court). Appellants' counsel offered no reason for Mr. Lyons' failure to be in court on time. Appellants cite no case where we have compelled a trial court to grant a motion for a continuance that states no grounds for the request.[9] Appellants' claim that the trial court cut counsel's explanation short is meritless. It was counsel's responsibility to state the reason for his request on the record.[10] As we said over a decade ago, it is important that "the trial calendar be kept moving and that last minute continuances be avoided where possible. This is not an easy task and the determination of the trial court to deny a request for a continuance should not be disturbed on appeal lacking a showing that it was a clear abuse of discretion." *D.C. Transit Sys-*

---

7. Although a defaulting party may not introduce evidence to defeat his opponent's right to recover at the hearing to establish damages, he is entitled to present evidence in mitigation of damages and to cross-examine witnesses. *Firestone v. Harris*, 414 A.2d 526, 528 (D.C.1980).

8. Appellants' counsel sought a continuance only for Mr. Lyons. He gave no indication that co-defendant Mrs. Lyons could not attend in his place. He gave no reason for not arguing points made on cross-examination of appellees' witness. Nor did counsel call any of the witnesses that appellants had intended to use at trial, some of whom could possibly have contributed to mitigation.

9. The cases cited by appellants, *Harris, supra; Warren v. United States Fidelity & Guaranty Co.*, 171 A.2d 747 (D.C.1961); *Bernard's Fur Shop, Inc. v. DeWitt*, 102 A.2d 462 (D.C.1954); *Cornwell v. Cornwell*, 73 U.S.App.D.C. 233, 118 F.2d 396 (1941) are distinguishable. In each of those cases the trial court was presented with a valid reason for a continuance which it incorrectly refused to recognize.

10. *Sterling v. District of Columbia*, 513 A.2d 253 (D.C.1986) cited by appellant is clearly inapposite. That case involved the termination of a telephone hearing where the examiner abruptly disconnected the phone, thus affording Sterling no opportunity to make a statement.

*tem, Inc. v. Young,* 293 A.2d 488, 490 (D.C.1972).

## IV.

 Lastly, appellants contend that appellees' proof at the damages hearing did not justify the award of punitive damages.[11] We disagree. Punitive damages are not a favorite of the law, but may be awarded where the act of the defendant is accompanied by gross fraud, willful disregard of the plaintiff's rights, or other aggravating circumstances. *See, e.g., Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982). The facts alleged in the complaint,[12] coupled with the evidence at the hearing, showed that appellants knowingly and with intent to deceive did not disclose that substantial Housing Code violations existed and that a tenants' petition was pending before the rental authorities at the time of the sale, which led to the loss of the investment.[13] Appellants' contention that the record lacks sufficient evidence of aggravating circumstances rings hollow; details bearing on this issue were the type of evidence that appellants refused to produce pretrial and furthermore failed to introduce at the hearing in mitigation.

*Affirmed.*

---

**11.** While the granting of punitive damages is a matter for the trier of fact, an award will not be sustained on appeal unless supported by the record. *Price v. Griffin,* 359 A.2d 582, 589 (D.C. 1976).

**12.** Upon default, the well-pleaded allegations of a complaint relating to liability (as opposed to damages) are taken as true. 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2688; *see, e.g., TWA v. Hughes,* 449 F.2d 51, 63 (2d Cir.1971), reversed on other grounds, 409 U.S. 363 (1973) (default entered under Rule 37 for refusal to appear for deposition and nonproduction of documents); *cf. Henderson v. District of Columbia,* 493 A.2d 982, 992 (D.C.1985). Here, appellants' alleged knowing nondisclosure with intent to deceive was the basis of appellants' liability for fraud and appellees' right to recover compensatory damages therefor, which were established by the default. *Firestone v. Harris, supra,* 414 A.2d at 528. Thus, at the hearing on damages, appellees' right to recover compensatory damages was not in dispute, only the amount thereof. However, punitive damages are not a matter of right. Even where a sufficient legal foundation exists for the award of punitive damages, the decision to award such damages lies with the trier of fact. *Harris v. Wagshal,* 343 A.2d 283, 288 n. 13 (D.C.1975); *accord, Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Systems, Inc.,* 214 U.S.App.D.C. 248, 253, 665 F.2d 1066, 1071 (1981) (trial court did not abuse discretion in refusing to award punitive damages despite evidence of willful misrepresentation, applying local D.C. law). Thus, while the default established facts that might underlie the award of punitive damages, it did not in itself establish appellants' liability therefor. The complaint sought $50,000 in punitive damages; the trial court awarded $9,000.

**13.** *Cf. Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986 (D.C.1980) (home buyer, suing a real estate agent and termite inspection company in negligence and fraud for reckless or knowingly concealing termite damage, entitled to jury finding on punitive damages). The case before us differs from *Feltman v. Sarbov,* 366 A.2d 137 (D.C. 1976), where the finding of fraud was based on a "narrow ground" devoid of any special aggravating circumstance and thus punitive damages were held improper.