Elise JOYNER, et al., Appellants,

v.

JONATHAN WOODNER COMPANY,
Appellee.

No. 81–165.

District of Columbia Court of Appeals.

Argued Aug. 17, 1983.

Decided July 6, 1984.

Roy L. Pearson, Jr., Neighborhood Legal Services Program, Washington, D.C., for appellants.

Arthur D. McKey, Washington, D.C., for appellee.

Before MACK and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

This is an appeal from a judgment of possession entered in favor of the Jonathan Woodner Company. Appellants formerly resided as tenants in the Park Towers

Building, an apartment complex at 2440 16th Street, N.W., that is owned by Woodner. The chronology of events that gave rise to a series of disputes between the parties began in May 1979 when appellants ceased paying rent because of the alleged existence of housing code violations and a reduction in managerial services at Park Towers. Woodner responded by filing individual suits for possession against appellants in June 1979. Appellants then counterclaimed for damages allegedly resulting from Woodner's breach of the implied warranty of habitability and also filed a petition with the District of Columbia Rental Accommodations Office (RAO) challenging a rent increase implemented in May 1978 and seeking a rollback in rent for decreased managerial services at Park Towers.

On January 4, 1980, while its suits for possession based on nonpayment of rent were pending, Woodner mailed individual letters to some of the tenants at Park Towers requesting access to their apartments to permit the performance of repairs that had been requested. Woodner did not have keys to the apartments, and therefore sought to arrange times and dates for gaining access. No responses to the letters of January 4 were received and similar letters were therefore mailed to appellants on May 7, 1980 and again on June 2. Appellants also failed to respond to those communications.

Lacking responses to its inquiries concerning repairs to Park Towers and access to appellants' apartments, on July 3, 1980, Woodner mailed letters to appellants stating that the failure to provide access was a lease violation and directing them to either provide access or vacate their apartments within thirty days. In a reply letter of July 24 from the Park Towers Tenants Association (PTTA), of which appellants were members, Woodner was informed that it could obtain a key to any of the apartments

from Clarece Walker, a tenant and member of the PTTA. Each appellant adopted this letter as his or her response to Woodner's correspondence of July 3.

After expiration of the thirty day period for curing, Woodner had been unable to gain access to the apartments. Therefore, on August 7, 1980, it filed individual suits for possession against appellants. These suits were in addition to the suits for possession brought against appellants in May 1979 for nonpayment of rent.

On December 2, 1980, the trial court granted Woodner's motion to dismiss the actions that were based on nonpayment of rent,[1] and on that same day, a jury trial commenced in this action for possession. Based on the claim that appellants denied access to the Park Towers apartments in violation of their lease agreements, the jury returned a verdict in favor of Woodner, and judgments for possession were entered. After unsuccessfully attempting to stay the judgments, appellants were evicted from Park Towers.

During the pendency of this appeal, it was brought to the court's attention that the Park Towers Building is now abandoned and uninhabited. An affidavit filed with the court indicates that the interior walls of the building had been demolished, and the windows, plumbing, and electrical wiring had been removed. Nevertheless, appellants maintained their appeal from the judgments of possession, arguing, *inter alia,* that Woodner's notices to cure or quit were defective, that service of the notices was improper, and that the trial court abused its discretion in denying appellants' motion for a continuance. In addition to challenging the merits of appellants' argument, Woodner contends that the uninhabitable condition of the Park Towers Building renders the appeal moot. We turn first to that threshold issue.

---

1. Dismissal of the possession suits followed the trial court's order of November 26, 1980 dismissing appellants' counterclaims for damages. In *Adams v. Jonathan Woodner Co.,* 475 A.2d

393 (D.C.1984), we reversed that order and remanded the case for trial on the merits of the counterclaims.

## I

It is recognized in this jurisdiction that a tenant's appeal from a judgment of possession for the landlord becomes moot if the tenant has voluntarily surrendered possession of the premises. *Atkins v. United States,* 283 A.2d 204, 205 (D.C.1971); *Dietz v. Miles Holding Corp.,* 277 A.2d 108, 109–10 (D.C.1971). Here, rather than voluntarily surrendering possession, appellants were evicted from the Park Towers apartments. Their involuntary departure from the premises does not render this appeal moot. *See Zanakis v. Brawner Bldg., Inc.,* 377 A.2d 67, 68–69 (D.C.1977) (tenant's involuntary departure from premises does not render appeal from judgment of possession moot). Woodner's assertion of mootness therefore rests on the uninhabitable state of Park Towers, a condition resulting from action taken by Woodner itself during the pendency of this appeal.

Appellants maintain that they have a right to return to Park Towers when the building again becomes habitable, and they argue that their desire to return makes this a substantial controversy capable of withstanding Woodner's assertion of mootness. We agree that assertion of this right and desire gives appellants a continuing interest in the outcome of the litigation and lends vitality to this appeal. A controversy remains to be settled.[2] *See Guttenberg Savings & Loan Association v. Rivera,* 85 N.J. 617, 428 A.2d 1289 (N.J.1981) (tenant's appeal from judgment of possession not moot although premises uninhabitable and sold to third party); *cf. Puget Sound Athletic Club v. Seven Fourteen Market Street Associates,* 34 Wash.App. 478, 663 P.2d 128 (Wash.App.1983) (tenant's appeal from judgment terminating its leasehold interest not rendered moot by landlord's leasing of premises to third party).

Woodner's alteration of the Park Towers Building, rather than mooting the appeal, was done with the risk that its judgment of possession could be overturned. A contrary conclusion would, of course, permit landlords who have won judgments of possession to deny tenants appellate review by altering the condition of the premises during the appeal period. We therefore turn to the merits of appellants' contentions.[3]

## II

Appellants first argue that the trial court erred in not instructing the jury that Woodner was required to prove the service of valid notices to quit on the tenants of Park

2. It appears from the record that after filing the original suits for possession, Woodner applied to the District of Columbia Housing and Community Development Office for a certificate of eligibility to convert Park Towers to a condominium or cooperative complex. Appellants actively opposed the application before their eviction. Representations made before this court indicate that efforts are presently in progress to complete conversion of the building.

Reversal of the judgment of possession in favor of Woodner could eventually result in permitting appellants to exercise those statutory rights that are granted to tenants upon conversion of rental units. These include the right to vote on conversion, the opportunity to purchase units in the event of conversion, and the right to receive relocation assistance after conversion. D.C.Code §§ 45–1621, –1622, –1631 (1981). The possible vesting of these rights in the event of reversal of the judgment of possession is further evidence of appellants' continuing interest in the outcome of this case and of the vitality of this appeal.

3. Woodner's reliance on this court's decision in *B & W Management, Inc. v. Tasea Investment Co.,* 451 A.2d 879 (D.C.1982) is misplaced. In that case, appellant sought an injunction to enjoin appellee from operating a surface parking lot. At oral argument before a division of this court, the parties stipulated that appellee had excavated his property and that it could no longer be used as a surface parking lot. In view of that stipulation, the court found the appeal from the denial of the injunction to be moot. The relief sought by appellant in the injunction had been obtained. *Id.* at 881. Here, in contrast, although Park Towers has been substantially altered during the appeal period, the alterations did not have the effect of providing appellants with the relief that they seek on appeal. Thus, unlike the appellant in *Tasea* who no longer had reason to pursue the injunction, appellants in this case have not obtained possession of their Park Towers apartments and therefore have a continuing interest in the outcome of this appeal.

Towers. Under the Rental Housing Act of 1977, before initiating eviction proceedings, Woodner was required to serve on appellants notices of alleged lease violations and notices to quit the premises. D.C.Code § 45–1699.6(b)(1) (Supp. VII 1980). Woodner contends that the parties stipulated at trial to the validity and sufficiency of these notices and that appellants are therefore barred from challenging on appeal the trial court's instructions on this issue.

■■■ It is generally recognized that matters stipulated to at trial can not be argued on appeal. *See William J. Davis, Inc. v. Young,* 412 A.2d 1187, 1193 n. 17 (D.C.1980); *Cowan v. United States,* 331 A.2d 323, 326–27 (D.C.1975). Here, appellants argue that they did not stipulate to the issue of notices to quit. The record, however, indicates to the contrary. The notice issue was raised as a preliminary matter prior to the start of the trial, and, after a discussion between the trial judge and counsel, the trial judge specifically stated that a stipulation had been reached to remove notice to quit as an issue. Counsel for appellants did not object to the court's statement and did not challenge at trial the sufficiency of the notice to quit. Nor did appellants' counsel object when Woodner's counsel referred to the stipulation during closing argument. Given this record, appellants cannot now assert that the court erred in failing to instruct the jury that Woodner was required to prove valid notice.[4]

### III

Appellants also contend that the trial court erred in denying their motion for a continuance. At a pretrial conference on November 12, 1980, in Woodner's actions for possession based on nonpayment of rent, the trial court scheduled trial for December 1, 1980, and apparently informed counsel that the possession actions based on failure to provide access would be tried shortly thereafter. Two weeks later, on November 26, the trial court entered an order granting summary judgment for Woodner on the tenants' counterclaims in the nonpayment cases. Tenants' motion for reconsideration of that order was denied following argument on the morning of December 1. On the following morning, the parties appeared for trial of the nonpayment cases, but Woodner moved to voluntarily dismiss those actions. After granting that motion, the court expressed its expectation that trial of the remaining possession actions would commence.

While Woodner's counsel indicated a willingness to proceed, appellants' counsel stated that they had not expected to try the access cases at that time. Counsel stated that they had not yet fully developed the facts in the access cases and were therefore unprepared to proceed. In denying appellants' request for a continuance, the trial judge noted that calendar constraints required him to proceed immediately with the cases. The trial began that afternoon.

■■■ A ruling on a motion for a continuance will not be disturbed unless there has

---

**4.** Appellants also contend that the trial court erred in not instructing the jury that the tenants' failure to provide access and the resulting breach of the lease could be excused if substantial housing code violations were found to have existed at Park Towers. The presence of housing code violations, argue appellants, prevented them from complying with their obligations under the lease. While correctly reciting the firmly established principle of contract law that prevention by one party excuses performance by the other, *Horlick v. Wright,* 104 A.2d 825, 827 (D.C.1954), appellants fail to demonstrate how the alleged existence of housing code violations prevented them from providing Woodner with access to the apartments. They also failed to directly advance this attenuated theory at trial.

Our review of the record indicates that there was not an adequate factual predicate for the requested jury instruction. Moreover, jury instructions must, of course, inform the jury of the controlling law. Yet, appellants have not cited any legal authority in support of their argument that housing code violations prevent or excuse tenants from providing access to premises. Indeed, such a rule of law would be entirely illogical in view of the duty of landlords to remedy code violations. The trial court did not err in refusing the requested instruction.

been a clear abuse of discretion. *Harris v. Akindulureni*, 342 A.2d 684, 686 (D.C. 1975) (citations omitted). Among the factors we view in determining whether discretion was abused are the reasons for the continuance request and the prejudice, if any, resulting from denial of the request. *Ceco Corp. v. Maloney*, 404 A.2d 935, 937 (D.C.1979); *Harris v. Akindulureni, supra*, 342 A.2d at 686.

■ Appellants' request for a continuance was based on the assertion that counsel had not fully developed the facts of the cases. The actions, however, had been filed five months earlier, and counsel had ample time to conduct discovery. Although a specific trial date had not been set, counsel were aware that the cases would be tried during either the first or second week of December after conclusion of the nonpayment possession actions. We are therefore unpersuaded, as was the trial judge, that denial of the motion for a continuance deprived appellants of an opportunity to develop the facts of the cases.

Nor are we persuaded that denial of the motion resulted in an unfair proceeding.

Rather, a review of the record indicates that appellants' counsel understood the case and vigorously advanced appellants' position. There is no indication that denial of the motion resulted in any witnesses being unable to appear or the loss of any evidence in support of appellants' case. We recognize that the significant interest in keeping the trial court's calendar current must not infringe on the parties' rights to a fair hearing. *See Harris v. Akindulureni, supra*. Under these circumstances, however, we conclude that the trial judge did not abuse his discretion in electing to proceed with the trial.[5]

There being no error requiring reversal, the judgment is

*Affirmed.*

5. As provided in D.C.App.R. 28(c), "[t]he appellant may file a brief *in reply to the brief of the appellee*" (emphasis added). In their reply brief, appellants directed this court for the first time to contentions they had advanced before the trial court in an unsuccessful motion for judgment notwithstanding the verdict or for a new trial. These issues had not been addressed in Woodner's brief, and in raising them, appellants clearly exceeded the permissible scope of the reply brief. We have nevertheless considered these issues and have concluded that none of them warrant reversal.

In their post-trial motion, appellants argued that during cross-examination of an appellant, Woodner impermissibly inquired about an offer of compromise that it had made to the tenants of Park Towers. Offers of compromise are, of course, to be excluded from evidence if "tendered as an admission of the weakness of the offering party's claim or defense." McCormick on Evidence § 274 (2d ed. 1972). This exclusionary rule, however, is for the offeror's benefit. Here, by inquiring into the compromise offer that it had made, Woodner waived the protections of that rule. Appellants have no basis for contesting that waiver. Moreover, in *Crain v. Allison*, 443 A.2d 558, 565 (D.C.1982),

this court held that only offers of compromise made after a controversy had arisen fall within the exclusionary rule and, here, Woodner's offer was made before it brought the suits for possession for failure to provide access.

Appellants contended further in their post-trial motion that the trial court abused its discretion in denying a motion to amend their answer. Appellants made this motion during trial prior to presentation of their defense. While mere delay is generally an insufficient ground for denying a motion to amend an answer, it will be deemed sufficient if the opposing party will be prejudiced and where satisfactory reasons for the lateness have not been offered. *Eagle Wine & Liquor Co. v. Silverberg Electric Co.*, 402 A.2d 31, 35 (D.C.1979). Here, appellants did not offer any reasons for the lateness of their proposed amendment. Moreover, any amendment of appellants' answer at that late hour would have been in derogation of Woodner's right to conduct discovery and, therefore, would have resulted in substantial prejudice. The trial court did not abuse its discretion in denying the motion.

The remaining contentions advanced in appellants' post-trial motion are equally without merit.