Robert H. MURPHY, et al., Petitioners,

v.

A.A. BEIRO CONSTRUCTION COMPANY, et al., Respondents.

No. 93–AA–132.

District of Columbia Court of Appeals.

Argued Nov. 22, 1994.

Decided June 27, 1996.

---

Edward E. Schwab, Assistant Corporation Counsel, with whom John Payton, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, were on the brief, for petitioners.

Timothy F. Brown, with whom Robert G. Watt and Charles W. Durant, McLean, VA, were on the brief, for respondents.

Before WAGNER, Chief Judge, and TERRY and SCHWELB, Associate Judges.

PER CURIAM.

The District of Columbia seeks review of a decision of the Contract Appeals Board (the Board) awarding respondents, A.A. Beiro Construction Co., Inc. (Beiro) and its insurer, Fidelity and Deposit Insurance Company of Maryland (Fidelity), damages of $6,570,278 plus interest from April 17, 1992. The award followed the Board's entry of default against the District and an *ex parte* proof hearing at which the District was not permitted to call witnesses. The District argues that the Board abused its discretion in denying its request for a continuance of the hearing and entering a default judgment against it when its lead counsel resigned unexpectedly on the last working day before the hearing. We agree and reverse and remand for a new hearing.

### I.

#### A. The Contract

In 1984, the District and Beiro entered into a contract for Beiro to construct an educational facility in the District. The total contract price was $8,098,000. The District issued Beiro a notice to proceed with the work on July 6, 1984, and the completion date was set for June 9, 1986. The contract had a standard provision for Terminations for Default and Terminations for Convenience. The District terminated the contract on July 31, 1989 for Beiro's alleged default, *i.e.*, Beiro's claimed failure to accept responsibility for defective workmanship and materials which resulted in major structural damage to the project. According to Beiro, there were serious design problems in plans for the project which ultimately necessitated a major redesign, and Beiro informed the District about them as early as February, 1985. The building was almost completed, and Beiro had been paid $5.3 million, according to the District.

Beiro contended that the District obtained the report of a consulting engineer, Carson Mok, who investigated and issued a report on January 14, 1986 (the Mok report) criticizing

the design and construction of the project. The District then issued a "rejection notice" to Beiro on February 28, 1986, rejecting the majority of the project's concrete because of cracking. The District also issued an order directing Beiro to stop work on the project. On March 17, 1986, Beiro sent a letter to the District pointing out design deficiencies, explaining that the concrete work had been performed pursuant to the plans and specifications, and requesting that the Stop Work Order be converted to a Suspension of Work for the Convenience of the District. As requested, the District issued a formal Suspension of Work Order pursuant to Article 26 of the contract on April 23, 1986.

On July 14, 1986, the District hired Meyer Associates (Meyer) to conduct a further investigation. Meyer submitted a final report on October 29, 1986, concluding that the project had design deficiencies but no substantial contractor errors. The Meyer report further concluded that fifteen new columns were required because of design error and that the only work needed to correct the contractor's error in the concrete slab was epoxy injection into concrete cracks. On December 5, 1986, the District instructed Beiro to submit a proposal for change-order work based on the Meyer report. Beiro submitted proposals on January 6, February 6, and February 25, 1987.

On December 9, 1986, the District of Columbia School Board reevaluated the project and determined that an additional $3–4 million would be needed to complete the building. The District took the position that it would not complete the building unless the School Board provided the additional funds, and the School Board voted to relinquish the project to the District on May 20, 1987.

On May 22, 1987, the District informed Beiro that work on the project would be suspended indefinitely and that it would discuss with Beiro its liability. On June 26, 1987, Beiro wrote to the District requesting payment and offering to inject epoxy into the concrete cracks at no cost to the District. Beiro again wrote the District on July 23, 1987 requesting payment and resumption of the work. Without responding, the District terminated Beiro's contract for default, cit-ing, among other reasons, the poor quality of the concrete construction and Beiro's failure to apportion liability between itself and the project's architect.

## B. The Appeal Proceedings

On August 16, 1987, Beiro appealed the default termination to the District's Department of Administrative Services (DAS), pursuant to the District of Columbia Procurement Practices Act of 1985 (DCPPA), D.C.Code § 1–1181.1, *et seq.* (1987). Beiro requested that the termination for default be changed to a termination for convenience. After a hearing, DAS issued a decision upholding the termination for default and awarding damages to the District in the amount of $89,427.23. Beiro and its insurer appealed to the Board. The District filed an answer and counter-claim seeking $8,089,000 in damages for breach of contract and negligence.

On July 14, 1990, the Board held a pre-hearing conference and set November 26, 1990 as the date for the hearing. The District filed motions for continuances on September 28 and December 17, 1990, for thirty days and sixty days respectively, both on the ground that counsel had resigned. The motions were granted and a new hearing date was set for September 18, 1991. On August 6, 1991, the Board, *sua sponte,* continued the hearing date for ninety days because two Board members' terms had expired. After a pre-hearing conference on November 18, 1991, the chief administrative judge (judge) issued an order the following day setting the following schedule: February 14, 1992, close of discovery; March 6, 1992, supplemental pre-hearing statements due; March 23–April 17, 1992, hearings. Beiro and Fidelity then filed motions on February 27, March 5, March 13, and March 17, 1992. On March 6, 1992 they filed a supplemental pre-hearing statement. According to the District, Beiro's motion for summary judgment was 587 pages, including exhibits. The motion filed on March 5, 1992 was to exclude from evidence testimony and test results of concrete cores which the District had discovered on January 31, 1992.

On March 12, 1992, the District filed a motion to extend to March 16 the time within which to respond to Beiro's motion for summary judgment, which the judge granted. However, an order was entered shortening the time for the District to respond to motions filed on March 13 and 19. By an order entered on March 11, the District was ordered to file three copies of its exhibits, instead of multiple copies only of exhibits used for cross-examination. The District filed its opposition to the motion for summary judgment on March 19, its opposition to the motion to exclude or limit the testimony of its expert on March 19, and its opposition to the motion for default judgment or to limit or preclude evidence relating to the termination of the contract on March 20. The District filed a supplemental pre-hearing statement on March 19. On March 17, 1992, the District moved for a two-week continuance of the hearing date, from March 23 to April 6, on the ground that it did not have sufficient time to prepare for the hearing, particularly given the numerous and lengthy motions to which it had to respond. This motion was denied on March 18, 1992.

On March 20, 1992, the District's lead counsel, an Assistant Corporation Counsel, (ACC) Eugene Austin, unexpectedly resigned. He informed his supervisor, Maria Holleran–Rivera, Chief of the Public Works Division of the Office of the Corporation Counsel, of his decision at about 1:00 p.m. that day. After confirmation by the Corporation Counsel, Austin's supervisor informed opposing counsel and prepared a motion for continuance. On March 23, 1992, Ms. Holleran–Rivera and Jeffrey B. Robinson appeared before the Board to argue the motion. They represented that Austin had been lead counsel of record since February 28, 1991, and that neither of two co-counsel were prepared to proceed with the hearing. Ms. Holleran–Rivera explained further that one of the attorneys, Karen Krueger, a former ACC, was a part-time consultant hired to assist the lead counsel and that Warren Nash, an ACC, had only acted in a support capacity in preparing the case. The Board denied the motion. The District could not proceed under the

circumstances; therefore, the judge entered a default in favor of Beiro and Fidelity.

On March 30, 1992, the Board issued an Opinion and Order on Default. The District filed a motion to vacate the default and for reconsideration of the denial of its continuance request on the ground that no attorney was prepared to go forward on the case on a two-day notice and that denial of a continuance was an abuse of discretion. In support of the motion, the District offered the affidavits of Ms. Holleran–Rivera, Ms. Krueger, and Mr. Nash. The Board denied the motion, and some weeks later, issued an opinion setting forth its reasons. Essentially, the Board was not persuaded that the District's attorneys were not prepared to proceed. It noted that at the *ex parte* proof hearing, Ms. Krueger made an opening statement outlining the District's theory of the case and some of the evidence, that the District called rebuttal witnesses on damages, and that the consultant attorney and two assistants had cross-examined witnesses. The Board pointed out that the District had caused delays by obtaining continuances in the past and that a delay would prejudice the opposing parties.

## II.

The District argues that the Board abused its discretion in denying the motions for continuance and in entering a default judgment in favor of Beiro and Fidelity. Specifically, it contends that the Board should not have compelled it to proceed to trial only two days after the lead counsel in the case resigned without prior notice and that Beiro's claim of prejudice is without merit. Further, the District argues that a continuance was warranted because of the disruption in the trial preparation time caused by Beiro's massive pre-hearing filings. Beiro contends that the entry of default was a proper sanction for the District's refusal to present its case and that the Board acted within its discretion in denying the motion. Beiro also claims that the motion was unsupported and that it would have been prejudiced by any delay.

 The Board has the authority to grant a continuance of a hearing "for good

cause shown." 27 DCMR § 124.2 (1989).[1] A request for a continuance is addressed to the sound discretion of an agency or trial court, and will be set aside only for an abuse of discretion. *Hairston v. Gennet,* 501 A.2d 1265, 1268 (D.C.1985); *Harris v. Akindulureni,* 342 A.2d 684, 686 (D.C.1975); *Cornwell v. Cornwell,* 73 App.D.C. 233, 235, 118 F.2d 396, 398 (1941). The discretion of the trial court "must be exercised in the interest of justice," *Cornwell,* 73 App.D.C. at 235, 118 F.2d at 398, and "with a view to promoting substantial justice." *Etty v. Middleton,* 62 A.2d 371, 373 (D.C.Mun.App.1948). The denial of a continuance will be reversed when a continuance is needed "to avoid 'material hardship and injustice.'" *Feaster v. Feaster,* 359 A.2d 272, 273 (D.C.1976) (quoting *Etty,* 62 A.2d at 373).

■ Factors relevant to determining whether the trial court or agency abused its discretion include the reasons for the request for continuance, the prejudice that would result from its denial, the parties diligence in seeking relief, any lack of good faith, and any prejudice to the opposing party. *Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 (D.C.1984); *Hairston, supra,* 501 A.2d at 1268; *Harris, supra,* 342 A.2d at 686. Considering the facts and circumstances of this case, we conclude that the agency erred in denying the District's motion for continuance. Here, the District had a most compelling reason to seek the brief continuance which it sought when its lead counsel resigned. We are not persuaded that the Board's observations at the *ex parte* hearing formed an adequate basis to assess the impact of the sudden departure of lead counsel in a complex case which had been scheduled to proceed to a full hearing or the level of preparedness of the other assistants on the liability issues. No one refuted the limited involvement of the consultant and the other assistants in the case. Moreover, given the voluminous record and the discovery involved, it was extremely unlikely that counsel, who had not expected to step into the position of lead counsel, could do so on two days notice.[2] The government had no way of forcing lead counsel to remain employed by the government. The Board observed that the attorney's sudden resignation without regard to an imminent trial might violate various Rules of Professional Conduct. Yet, even in the face of such consequences, the attorney was undeterred in resigning.

We have recognized that the Corporation Counsel's practice of having one lead counsel in a complex case is a "rational use of the government's limited legal resources." *Harris, supra,* 342 A.2d at 687. A consultant and another ACC had assisted lead counsel intermittently with preparation for trial. However, one of the attorneys was on a limited part-time contract with the Office of Corporation Counsel, and the other had limited participation in the case.

Second, it does not appear that Beiro would have been prejudiced by a reasonable delay of the hearing. Beiro argues that it suffered prejudice as a result of the numerous delays, that it had been driven out of business and into bankruptcy, and that it was a hardship to assemble former employees and refresh their recollection regarding the events. It appears that Beiro's bankruptcy occurred prior to the District's unanticipated need to request a continuance, and therefore, is not a fair consideration in this context. On the other hand, the District was prejudiced by denial of a continuance where it had no attorney who could handle this complicated trial, involving millions of dollars, on such short notice. This is an important factor for consideration in the analysis. *See Hairston, supra,* 501 A.2d at 1268.

---

1. The relevant portions of 27 DCMR § 124 provide:

 124 CONTINUANCES
 124.1 Any party may move in writing to request a continuance of any scheduled hearing, or to extend the time to file a pleading, or for leave to amend a pleading if the motion is served on opposing parties and the Board at least five (5) days before the hearing or the time limit.

 124.2 Continuances shall be approved only for good cause shown.
 124.3 Conflicting engagements of counsel, absence of counsel, or the employment of new counsel shall not be regarded as good cause for continuance unless set forth promptly.

2. The record in the case, excluding transcripts, is over 5,000 pages.

■ The entry of a default judgment is an extreme sanction, and it should be imposed only upon a showing of severe circumstances. *See, e.g., Greene v. District of Columbia,* 539 A.2d 1082, 1083–84 (D.C.1988) (citations omitted); *Hinkle v. Sam Blanken & Co.,* 507 A.2d 1046, 1049 (D.C.1986). "'[S]evere circumstances' arise from the nonmovant's deliberate or willful non-compliance with court rules and orders, resulting prejudice to the movant's ability to successfully pursue the litigation, and the conclusion that alternative, less severe sanctions will not suffice, 'notwithstanding the societal preference for a decision on the merits.'" *Iannucci v. Pearlstein,* 629 A.2d 555, 559 (D.C.1993) (quoting *Lyons v. Jordan,* 524 A.2d 1199, 1201 (D.C. 1987)) (other citations omitted). Willfulness includes a "'conscious or intentional failure to act.'" *District of Columbia v. Greene,* 539 A.2d 1082, 1084 (D.C.1988) (quoting *U.S. Merchandise Mart, Inc. v. D & H Distributing Co.,* 279 A.2d 511, 513 (D.C.1971)) (other citations omitted). There was no showing of willfulness associated with the District's emergency request. The record reflects that prior delays were attributed to a number of factors, including circumstances concerning the Board.

The District moved speedily to seek a continuance in this case, in good faith. Given the circumstances, the significant prejudice to the District from denial of the request, and the lack of significant prejudice to Beiro by a short continuance, the Board abused its discretion in denying the continuance and entering a default judgment. *See Joyner, supra,* 479 A.2d at 312. Decisions on the merits are preferred whenever possible, and where there is any doubt, it should be resolved in favor of trial. *Etty, supra,* 62 A.2d at 373.

### III.

Finally, Beiro and Fidelity argue that the Board's decision should be affirmed on the basis that the Board erred in denying their motion for summary judgment. They contend that they should have been granted summary judgment on the following grounds: (1) the District terminated Beiro for its own convenience; (2) the District failed to lift the suspension precluding a termination for default; (3) the District failed to perform its contract obligations, precluding a default termination; (4) the District waived any grounds for default by agreeing to go forward with the project; and (5) the District refused to allocate responsibility for alleged errors, suspension precluding a default termination. The Board denied the motion for summary judgment, stating that there were material issues of fact in dispute. The record supports the Board's determination, and we will not disturb it.

For the foregoing reasons, the Board's order is reversed and the case is remanded for a hearing on the merits.

*Reversed and remanded.*

SCHWELB, Associate Judge, dissenting:

On October 15, 1992, the District of Columbia Contract Appeals Board (DCCAB) awarded respondents A.A. Beiro Construction Co. and its insurer, Fidelity and Deposit Company of Maryland,[1] the sum of $6,570,278 with interest from April 17, 1992, against the District of Columbia. The award was based on a finding that the District had improperly terminated a contract with Beiro for the construction of a facility for the handicapped. The District has asked us to review this award, and contends in this court, as it argued before the DCCAB, that the Board abused its discretion by denying the District's request for a continuance after one of the District's attorneys, allegedly its "lead counsel," resigned from the Office of Corporation Counsel on March 21, 1992, the last business day preceding the scheduled March 24 trial date. I discern no abuse of discretion.

The circumstances leading to the DCCAB's denial of the motion for a continuance are described in detail in the DCCAB's Opinion and Order on Default, which was issued on March 30, 1992 and published at 39 DCR 4507 (June 1992). That Opinion and Order, which was written by then Chief Ad-

---

1. In this opinion, I shall refer to the two respon- dents collectively as Beiro.

ministrative Judge Zoe Bush,[2] is attached hereto as Attachment "A". Briefly, the Board denied relief because the District had obtained several prior continuances, two of which had resulted from changes in counsel; because the Board had previously noted that no further continuances would be granted; because the District's purported lead counsel had not in reality acted as lead counsel; and because this attorney ought not to have been permitted to resign on the eve of trial. The Board set a hearing on quantum of damages, and ordered that, at that hearing, Beiro "must be prepared to come forward with proof of *both* entitlement and quantum." (Emphasis in original). The order explicitly authorized the District to participate in the hearing.

The District filed a motion for reconsideration and submitted the affidavits of the remaining attorneys associated with the case, each of whom claimed insufficient grounding in the litigation to act as lead counsel. The District's submission did not describe in any detail the circumstances surrounding the departing attorney's resignation, and there was no indication that the Office of Corporation Counsel made any effort to prevent his precipitous withdrawal.

On May 5, 1992, the Board denied the motion for reconsideration in an order which was also written by Judge Bush. The Board concluded, *inter alia,* that the District was responsible for extensive prior delays in the case and that the attorneys who remained on the case were well-informed with respect to it and had participated effectively in the hearing on damages.

The DCCAB has considerable latitude in determining whether to grant or deny a motion for a continuance. *See, e.g., Edelen v. United States,* 627 A.2d 968, 972 (D.C.1993); *Hollywood Credit Clothing Co. v. Hamdon,* 79 A.2d 163, 163–64 (D.C.Mun.App.1951). A rigid insistence upon expedition of trial in the face of a justifiable request for delay, may of course "render the right to defend an empty formality," *Edelen,* 627 A.2d at 972 n. 7 (citations omitted), but it is for the agency to determine in the first instance whether the request was justified. The question now presented to us is not whether this court would have granted a continuance if it had been the tribunal to whom the initial decision was entrusted. Rather, we must decide whether the DCCAB, which was much closer than we are to the case, and which was far more familiar with the roles played in the litigation by the District's individual attorneys, "obviously and palpably" abused its discretion in denying the District's motion. *Warwick v. Warwick,* 372 So.2d 1108, 1109 (Ala.Civ.App. 1979).

In my view, the DCCAB carefully and conscientiously weighed the appropriate factors in its rulings on the District's request. Specifically, the Board properly considered the earlier continuances occasioned by the District's prior substitutions of attorneys,[3] the continued availability of attorneys who had done substantial work on the case,[4] its own explicit warning that no further delay would be tolerated,[5] and the District's failure to detail either the circumstances of the attorney's resignation or any efforts made by his supervisors to prevent it.[6] The DCCAB also expressly considered the District's staff-

---

**2.** Judge Bush is now an Associate Judge of the Superior Court of the District of Columbia.

**3.** *See, e.g., Arant v. Grier,* 286 Ala. 263, 239 So.2d 188, 189 (1970) (continuance properly denied where client had previously twice changed attorneys); *Taylor v. Gill Street Invs.,* 743 P.2d 345, 348–49 (Alaska 1987) (third continuance properly denied where client had received two prior continuances to obtain counsel and where he had been advised that no further continuances would be granted). "As a general rule, courts do not favor second or further continuances, and will exercise their discretion more rigidly in such cases than on a first application." 17 C.J.S. *Continuances* § 112, at 496 (1963 & Supp.1995).

**4.** *See, e.g., Benson v. Benson,* 66 Nev. 94, 204 P.2d 316, 318 (1949). "Generally, it is not reversible error if the trial court denies a continuance because of the unavailability of the principal counsel." *In re Guardianship of Deere,* 708 P.2d 1123, 1125 (Okla.1985) (footnote omitted).

**5.** *Cf. Holland v. Capital Transit Co.,* 114 A.2d 426, 427 (D.C.Mun.App.1955); *Agnew v. Parks,* 219 Cal.App.2d 696, 33 Cal.Rptr. 465, 469 (1963).

**6.** *See, e.g., Sager v. Moltz,* 80 Ind.App. 122, 139 N.E. 687 (1923).

ing problems,[7] but correctly ruled that such considerations could not be dispositive.[8] *See generally* Annotation, *Withdrawal or discharge of counsel in civil case as ground for continuance,* 48 A.L.R.2d 1155 (1956 & Supp. 1992).

The DCCAB made a meaningful effort to be fair to all concerned. The District was permitted at the default hearing to cross-examine Beiro's witnesses both as to liability and as to damages. The District's attorneys took full advantage of this opportunity.[9] Following the denial of its motion for a continuance, the District could also have pre-

sented its own witnesses to the best of remaining counsel's ability, instead of refusing to proceed,[10] and this could have been accomplished without waiving the District's objection to the denial of its motion.[11] The District's refusal to proceed foreclosed the possibility of any pragmatic assessment of the extent, if any, to which it was handicapped by the absence of its "lead" counsel. The DCCAB could reasonably conclude that the District is now in no position to complain of this informational void.[12]

I would affirm the decision of the Board. Accordingly, I respectfully dissent.

---

7. Judge Bush stated:

 The Board is sympathetic with the personnel constraints of the Office of Corporation Counsel. However, this is not a problem that it appears will be resolved in the near term and that alone can determine the Board's calendar.

8. It is clear that the unexplained withdrawal, on the eve of trial, of the attorney for one of the parties to an action, as was the case here, affords no compelling ground for an application for a continuance ..., if the contrary rule should prevail, all a party desiring a continuance under such circumstances would have to do would be to discharge his counsel or induce him to file a notice of withdrawal. This is not a situation such as would be presented in the event of the sudden illness of counsel, or where an attorney would apply to the court for leave to withdraw and for good cause shown be, by the court, granted such permission. We have here nothing but the mere fact of the withdrawal on the part of counsel, and it cannot be held that such a situation entitled appellant to a continuance of the action.

 *Peterson v. Crockett,* 158 Wash. 631, 291 P. 721, 722–23 (1930). I agree with Judge Bush that *Harris v. Akindulureni,* 342 A.2d 684 (D.C.1975), is distinguishable from the present case for the reasons stated by her in Attachment "A".

9. In her order denying the District's motion for reconsideration, Judge Bush wrote as follows:

 With regard to the affidavits filed by the District's attorneys as evidence that they were not prepared to go forward, the Board notes: (1) Ms. Krueger made an opening statement that set forth the District's theory of the case, referred specifically to expert testimony and reports, referred specifically to trial exhibits, and set forth the specific facts an dates that the District would rely on to prove its case ...; (2) Mr. Nash, Mr. Harlan and Ms. Krueger were able to cross-examine all of Appellants' witnesses, some at great length; and (3) the District called rebuttal witnesses on quantum. The Board reiterates that any further delay would have unfairly prejudiced Appellants; that Beiro Construction Co., Inc., is no longer

in business; and Appellants were prepared to go forward on dates for hearing which were set as final in November 1991. Finally, the Board finds, contrary to the District's assertions, that prior stays and continuances were sought or caused by the District and granted by the Board.

10. My colleagues point out, and I agree (as did Judge Bush), that decisions on the merits are preferred, and that "[t]he entry of a default judgment is an extreme sanction ... [which] should be imposed only upon a showing of severe circumstances." In this case, however, a default was entered because, after the DCAAB denied the District's motion for a continuance, the District literally defaulted by declining to proceed. In my opinion, the sole issue before us is whether the DCAAB abused its discretion with respect to the request for a continuance. If there was no abuse, then the order finding the District in default was demonstrably appropriate.

11. The District also contends in this court that it could not be ready for trial on the specified trial date because, during the period immediately preceding that date, Beiro deliberately bombarded it with unjustified lengthy motions and pleadings. Beiro vigorously disputes these allegations and blames the District for any last-minute problems of this kind. The District affirmatively stated in its motion for a continuance that but for the resignation of its "lead attorney," it would have been ready to proceed. Under these circumstances, we should not now entertain the District's contrary contention. *See Rafferty v. District of Columbia Zoning Comm'n,* 583 A.2d 169, 178 (D.C.1990).

12. I recognize that this case involves a great deal of money and that any award in favor of Beiro would be at the taxpayers' expense. There is no dispute, however, that when the District appears in court as a party it is subject to the same procedural rules as private litigants. *District of Columbia v. Wical Ltd. Ptnshp.,* 630 A.2d 174, 183 (D.C.1993) (citations omitted); *see also District of Columbia v. Banks,* 646 A.2d 972, 978 (D.C.1994).

ATTACHMENT A

## GOVERNMENT OF THE DISTRICT OF COLUMBIA CONTRACT APPEALS BOARD

Appeal of: A.A. Beiro Construction Co., Inc. and Fidelity and Deposit Company of Maryland

CAB No. D–822

Under Contract No. 0342–AA–02–1–2–CC

OPINION AND ORDER ON DEFAULT

By Order dated November 19, 1991, the Board scheduled a hearing in this appeal to begin on Monday, March 23, 1992, and conclude by April 17, 1992. On Friday, March 20, 1992, at 6:00 p.m., on the eve of trial, the District of Columbia Government (District) filed a motion for continuance of the trial. The reason for the request was that lead counsel had submitted his resignation on that same date, March 20, 1992, and the two other attorneys for the District on the case were not "prepared to fill the void" created by lead counsel's resignation. The motion requested a three-month continuance.

The motion for continuance was raised as a preliminary matter at the hearing on Monday, March 23, 1992. Appellants, A.A. Beiro Construction Co., Inc., and Fidelity and Deposit Company of Maryland, opposed the motion. Appellants asserted that: (1) there have already been three or four continuances in this case; (2) the Board indicated in an Order issued on November 22, 1991, that no further continuances would be granted and that the dates set for hearing were final; (3) the default termination taken against them by the District was a drastic action and they wanted their day in court; (4) the two other counsel in the case had been involved for a long period of time and that the Section Chief representing the District at the hearing had been involved in the case longer than the lead counsel who resigned; (5) lead counsel had not really acted as lead counsel in the case and never took one deposition; and (6) lead counsel has an obligation to continue his representation and should not be allowed to resign right before trial.[1]

In response, the Section Chief representing the District at the hearing[2] reiterated that the two counsel involved in the case together did not have a command of the entire case, and that the District is entitled to have the attorney that is best prepared to go forward to present its case. The District then cited *Harris v. Akindulureni,* 342 A.2d 684 (D.C.App.1975), for the proposition that when a Corporation Counsel attorney is unavailable for trial due to uncontrollable circumstances, it would be an abuse of discretion to deny the continuance that the government requests. (Tr., pp. 8–10).

The Board then denied the request for continuance and recited the litany of requests for delay made by the District, and the delays in the hearing that had been granted by the Board at the request of the District. The Board reasoned:

The complaint in this case was filed on July 14, 1989. On October 11, 1990, the Board granted the District's request for a stay and delayed hearings at that time for six months. On January 28, 1991, the Board granted the District's second request for a stay and delayed hearings for four months.

On October 11, 1991, the District moved for a stay which was denied. On March 17, 1992, the District moved for a continuance which was denied on March 18, 1992.

Finally last Friday, on March 20, 1992, the District moved for a continuance of trial. The basis for this motion is the resignation of lead counsel and the requested delay is for three months. This is not the first request for delay based on the resignation of lead counsel.

The Board is not happy with the procedural posture of this case. The Board is not happy with the District's continued requests for extensions, and the Board is not happy with the numerous failings of the District to meet Board deadlines and directives.

---

1. Transcript of March 23, 1992 hearing, (Tr.) at pp. 5–7.

2. The Section Chief entered a "special appearance" at the hearing, only for purposes of arguing the Motion for Continuance (Tr. pp. 3, 12).

The Board is sympathetic with the personnel constraints of the Office of the Corporation Counsel. However, that is not a problem that it appears will be resolved in the near term and that alone cannot determine the Board's calendar. The District's motion is denied.

After the Board denied the request for continuance, the District's Section Chief announced that she was leaving because the District was not prepared to go forward. (Tr. 12) At that point, Appellants asserted that the Section Chief's withdrawal was an obvious ploy on the District's part because the two attorneys for the District who had been actively involved in the case were not present in the hearing room. (Tr. 13) Appellants then moved for a default (*Id.*). The Board, noting that the District had indicated that it was not prepared to go forward with the hearing, granted Appellants' motion for default and adjourned the hearing. *Id.*

On March 25, 1992, Appellants filed a motion to set a hearing on quantum for April 13, 1992, and for expedited ruling. In that motion, Appellants request an opportunity to present evidence to establish their damages for the record and assert that if the District wishes to appear and contest the evidence presented, it may do so. Appellants cite as support *Firestone v. Harris,* 414 A.2d 526, 528 (D.C.App.1980). Appellants continue that if the District declines to appear, the usual practice would be to permit proof of damages *ex parte. Id.* at 527.

This case presents the first instance in the relatively short history of the Board, as constituted pursuant to the District of Columbia Procurement Practices Act of 1985 (PPA), D.C.Code § 1–1189, where the District has been found in default. This is a serious sanction in an important case, and this certainly is not an action that the Board takes lightly. However, the Board believes that the inordinate delay and extreme prejudice

to Appellants which would have resulted from granting any further continuances justifies the finding of default.

The Board's rules do not specifically set forth procedures concerning default, and so the Board will look to the District of Columbia Superior Court Rules of Civil Procedure for guidance.[3] Superior Court Rule 55(a) provides that when a party fails to plead or otherwise defend, the Court shall enter the party's default. With regard to judgment by default, it may be entered by the Court where the party entitled to judgment by default applies to the Court therefore. Rule 55(b). The party against whom judgment by default is sought shall be served with written notice of the application for judgment at least 3 days prior to hearing on such application. Rule 55(b). The Court may conduct such hearings as are necessary to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter. Rule 55(b). No judgment by default shall be entered against the District of Columbia unless the claimant establishes a claim or right to relief by evidence satisfactory to the Court. Rule 55(e).

Our review of case law relevant to Superior Court Rule 55 convinces us that the District's request for continuance was properly denied, that default is appropriate here, and that a hearing is necessary to establish entitlement and quantum before default judgment can be entered.

As a general proposition, refusal of continuance rests within the trial court's sound discretion and is generally not subject to reversal, unless abuse of discretion is shown. *Klein v. Rappaport,* 90 A.2d 834, 835 (D.C.App.1952). The Board did not abuse its discretion in this case and the District's reliance on *Harris v. Akindulureni, supra,* is misplaced. In that case, the District of Columbia Court of Appeals found that the fact that the Assistant Corporation Counsel to whom the case had been assigned was un-

**3.** The Board's rules concerning sanctions provide generally,

*SANCTIONS*

If a party or the party's representative fails or refuses to comply with a Board order or rule, or engages in unreasonable or vexatious con-

duct, the Board may, on its own initiative or on motion of a party, sanction the offending party or representative as it considers necessary to the just and expeditious conduct of the case. 36 DCR 2699.

able, because of prior court commitments, to appear at trial was, by itself, sufficient to require the granting of a continuance. Further, the Court of Appeals found that the trial court erred in denying a continuance without an inquiry either into the possibility of rescheduling the case with a minimum of additional delay or of any specific prejudice which appellee might suffer by delay. In that case, the District's case was being tried with one counsel, and only one delay had been requested by the District prior to trial. We find the case before the Board factually distinguishable from *Harris v. Akindulureni, supra.*

In the appeal before the Board, the District has been represented by numerous counsel and has requested numerous delays. The appeal was first docketed on July 14, 1989. On August 16, 1989, Frank E. Barber, Assistant Corporation Counsel, entered an appearance on behalf of the District. On September 28, 1990, the District requested a 30-day stay of proceedings because the District had recently assigned new counsel to the appeal. New counsel was Karen J. Krueger, Assistant Corporation Counsel. The request was granted by Board Order dated October 11, 1990. On December 17, 1990, the District requested a second stay of proceedings because Karen J. Krueger was retiring, and new counsel needed additional time to familiarize herself with the trial. New counsel was Maria Holleran–Rivera, Assistant Corporation Counsel. The District's request was granted by Board Order dated January 28, 1991, wherein the Board stated:

> This matter is before the Board on the motion of the District of Columbia for an order staying all further proceedings in this appeal, including discovery procedures, until February 19, 1991. The District cites understaffing and inability to employ attorneys as the reasons for its request. Within a span of five months, the District has been represented in this litigation by no less than three counsel; its present motion requests time to identify and employ a fourth.
>
> This case has been before this board for some 18 months and two different hearing dates have already been set. The first date of November 26, 1990 could not be adhered to due to the resignation of the District's first counsel; and the present hearing date of May 1, 1991 appears unrealistic at this time because of the resignations of the District's two succeeding counsel.
>
> The objections raised by appellants are understandable for it appears to the Board that the failure of the District to provide continuity of counsel is adversely affecting appellants' ability to prepare their case. The hearing in the case is also affected by the delay.
>
> If the Board is to maintain control of its calendar so that cases may proceed in an orderly and timely fashion, the District cannot be permitted to frustrate this process with impunity under the continuing guise of understaffing. Where the District is involved, those who do business with it in the marketplace have the right to expect that the District will set an example for fair dealings. Delays in resolving procurement disputes may be detrimental not only to the contractors involved, but to the general public as well.
>
> The Board is not unaware nor unmindful of the funding problems facing the District and at this time is not inclined to deny its motion; however, *the circumstances here do warrant the very strong admonition that the District risks the imposition of sanctions should its future conduct materially affect the orderly and timely prosecution of this case to resolution.* (emphasis added).

Thereafter, on February 28, 1991, the District entered the appearance of Eugene T. Austin, Assistant Corporation Counsel.

By Order dated August 6, 1991, the Board directed that the hearing scheduled for September 14, 1991 be continued for 90 days or until such time as the new Chief Judge may require, because of the retirement of two of the three judges on the Board. On October 11, 1991, the District moved to stay proceedings pending a pre-hearing conference because of the retirement of the then-presiding judge. On October 16, 1991, the Board issued an order prior to pre-hearing conference. Thereafter, on November 19, 1991, the Board issued a pre-hearing conference report

and order which scheduled hearings to begin on March 23, 1992. On November 22, 1991, the Board granted the District an extension of time to submit its opposition to Appellants' motion for default judgment and stated:

> Contrary to the District's characterization, this case cannot be described as being accelerated in any way. The complaint in the case was filed on July 14, 1989. By Board Order dated October 31, 1990 hearings were scheduled to commence on November 26, 1990. At the request of the District, proceedings were stayed for 30 days by Board Order dated October 11, 1990. By Board Order dated October 30, 1990, discovery was extended to March 1, 1991 and hearings were extended to May 1, 1991. The District again requested a stay of proceedings on December 17, 1990. The Board granted this stay on January 28, 1991 and by Order dated March 15, 1991, the Board extended discovery through August 12, 1991 and rescheduled hearings to September 18, 1991. By Order dated August 6, 1991 the Board continued these proceedings because of the retirement of two of its three judges. On October 11, 1991 the District moved to stay proceedings pending the next status conference. On October 16, 1991 the Board issued its Order prior to pre-hearing conference. Thereafter, by Order dated November 19, 1991 the Board has rescheduled procedural dates with discovery to conclude on February 14, 1992 and for hearings to begin on March 23, 1992.
>
> The parties should consider the dates set forth in the Board's November 19, 1991 Order to be *final*. The Board does not anticipate granting *any* further requests for extension by the District, and only grants the instant request because it will not affect the procedural dates for discovery and hearing, and because of the impor-

tance of the issue to be addressed in the District's response.[4]

As the language in this Order indicates, the Board has previously continued hearings for ten months from November 26, 1990 to September 18, 1991 as the result of two requests for delay from the District. The District's fourth request to continue hearings was filed on March 17, 1992 and denied on March 18, 1992. That request was for a two-week continuance, and the stated basis was that responding to numerous pretrial motions had hindered the District in preparing its case.

As the above-recited litany of change of counsel and requests for continuance shows, this appeal is factually distinguishable from *Harris v. Akindulureni, supra.* In this case, the District has previously requested and been granted two continuances because its lead counsel left the employ of the Office of Corporation Counsel. Further, the District was not represented by only one lawyer in this case. Just prior to trial the District was represented by attorneys Austin, Nash, Krueger and Holleran–Rivera.[5] Further, attorneys Krueger and Holleran–Rivera, who returned to District service as a legal consultant and section chief, respectively, had worked on the appeal *prior to* lead counsel Austin, whose resignation prompted the fourth and final request for continuance. Moreover, unlike the trial court in *Harris v. Akindulureni, supra,* the Board has considered the amount of delay which would have resulted as well as prejudice to Appellants if the continuance were granted. The three months of delay requested by the District, if granted, would have resulted in a scheduling conflict with appeal CAB No. D–839 which is currently scheduled for five weeks of hearing in late-June to mid-July. In fact, the Board's calendar cannot accommodate four weeks of hearing until late September 1992, or a delay of six additional months. The prejudice to Appellants is obvious in that Beiro Construc-

---

4. Even though the Board's order stated that the Board did not anticipate granting any further requests for extension by the District, the District requested an extension on January 21, 1992, which was denied; on March 6, 1992 the District requested an extension which was granted; on March 12, 1992 the District requested an extension which was granted; and on March 16, 1992

the District requested an extension which was granted.

5. Even though Nash and Krueger had not entered formal appearances, they had been signing pleadings on behalf of the District.

tion Co. Inc., has gone bankrupt during the course of these proceedings.[6]

The Board believes that the District's reliance on *Harris v. Akindulureni, supra,* is misplaced because the Court of Appeals could not have meant to give the Office of Corporation Counsel *carte blanche* to demand a continuance whenever a lawyer in that office cannot appear at trial; and that if the continuance is denied, the lawyers in that office can withdraw on the date of trial with impunity and the assurance that a new trial will be granted on appeal.[7] The Board further believes that the extreme circumstances recited above justify the Board's denial of the continuance and granting the motion for default.

Turning to the Appellants' March 25, 1992, motion to set hearing on quantum, the Board finds that Appellants' reliance on *Firestone v. Harris, supra,* is partially misplaced. That is so because the appeal before the Board is in a very different procedural posture than the matter in *Firestone.* The appeal in *Firestone* arose from a default judgment entered for failure to comply with the trial court's discovery order. Thus, the case in *Firestone* was not at issue, as is the appeal pending before this Board.

The District of Columbia Court of Appeals has consistently held that where a case is at issue, it is essential to require proof on *liability as well as damages* where the defendant

has filed an answer. *D.C. Transit System Inc. v. Young,* 293 A.2d 488, 490 (D.C.App. 1972). In *D.C. Transit,* the court explained that where a defendant appears at trial and refuses to proceed when his request for continuance is denied, the plaintiff must be put to his proof.

> One who has knowledge of a definite date for trial must know that if he fails to appear ready for trial he runs the risk of the trial proceeding without him, or even of having judgment entered against him where there is a verified complaint. A defendant who appears on the trial date but refuses to proceed is not in much better position than one who fails to appear. However, a default should not have been entered since the defendant had answered. As he was not in default in pleading, a confession of liability cannot be inferred and the plaintiff must be put to his proof. (footnotes omitted) *Id.* at 489.

This reasoning has been followed in *Taylor v. Washington Hospital Center,* 407 A.2d 585, 590 (D.C.App.1979) and *Milton Properties, Inc. v. Newby,* 456 A.2d 349, 354 (D.C.App. 1983). *See Klein v. Rappaport, supra.*

With these cases as guidance, the Board will grant Appellants' motion in part. However, at the April 13, 1992 hearing, Appellants must be prepared to come forward with proof of *both* entitlement and quantum. Appellants will also be required to provide a court reporter for the hearing.[8] The District

---

**6.** Beiro Construction Company first appealed its claim to the Director of the Department of Administrative Services on August 28, 1987.

**7.** The Board is concerned that the action of lead counsel in resigning from the Office of Corporation Counsel (and the acceptance of the resignation) on the eve of trial may rise to the level of a violation of the D.C. Rules of Professional Conduct (January 1, 1991). *Id.* Rule 1.3, Rule 1.6 and Rule 5.1. Rule 1.16(b) states, in pertinent part:

> Except as stated in paragraph (c), a lawyer may withdraw from representing a client *if withdrawal can be accomplished without material adverse effect on the interests of the client,* ... (emphasis added)

Rule 5.1(b) states:

> A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

Here, there appears to be a serious question as to the propriety of Appellee's counsels' conduct before this tribunal; for the record lacks evidence of: (1) justifiable cause for counsel's resignation; (2) reasonable notice to the client of resignation; and (3) permission of this Board to withdraw on the eve of trial. *See Fisher v. State,* 248 So.2d 479 (Fla.1971); *Smith v. Bryant,* [264 N.C. 208] 141 S.E.2d 303 (N.C.1965); *Fairchild v. General Motors Acceptance Corp.,* [254 Miss. 261] 179 So.2d 185 (Miss.1965). *See also Matter of Burka,* 423 A.2d [181] 182 (D.C.App.1982); *Matter of Keiler,* 380 A.2d 119 (D.C.App.1977) (concerning actions of counsel which impede the administration of justice).

**8.** Normally the Office of Corporation Counsel provides the court reporter for Board hearings. But because the Board cannot be assured that the District will participate in this hearing, Appellants must provide their own court reporter.

may participate in the hearing, however; if the District chooses not to, the Board will proceed *ex parte.*[9] *See Firestone v. Harris, supra.*

So ORDERED.[10]

DATE: <u>March 30, 1992</u>

　　　　/s/ <u>Zoe Bush</u>
　　　　　　ZOE BUSH
　　　　　　Chief Administrative Judge

/s/ <u>Terry Hart Lee</u>

　　TERRY HART LEE

　　Administrative Judge

---

**9.** The District's participation should include, but may not be limited to the opportunity to cross-examine Appellants' witnesses and the opportunity to present rebuttal testimony to counter Appellants' presentation.

**10.** Administrative Judge Benjamin B. Terner did not take part in this Opinion and Order on Default due to an extended illness.