Dr. Robert B. COLEMAN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 96–CV–545.

District of Columbia Court of Appeals.

Argued June 20, 1997.

Decided Sept. 18, 1997.

Eric Steele, Wauwatosa, WI, for appellant.

Edward Schwab, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before SCHWELB, FARRELL and REID,* Associate Judges.

PER CURIAM:

This appeal from an order of the Superior Court in turn affirming a decision of the City Administrator that the Department of Human Services (DHS) did not discharge appellant unlawfully leaves us unable presently to answer the key factual question underlying the dispute: whether the contract and grant of funds pursuant to which appellant had received a term appointment expired on June 30, 1990, or on June 30, 1991. If the latter, then it is probable—although we do not decide the issue at this time—that we would sustain the City Administrator's decision that appellant was not terminated from his job by reason of unlawful discrimination, but rather that his job simply expired because the contract and grant of money authorizing it had terminated.[1] If the former is the case, then we would have great difficulty upholding that decision in light of findings made by the Department of Human Rights (DHR) that appellant (unlike others similarly situated) was denied an extension of his appointment in retaliation for testimony at another proceeding and because of discrimination on the basis of his personal appearance. We therefore will remand the record to DHR to permit it to resolve this factual issue in the first instance.

## I.

◼ Appellant was hired by DHS on November 7, 1988, as a clinical psychologist to work on an AIDS Demonstration Project. Although his appointment was originally temporary, his status was then modified to that of a term employee. Initially the term was to expire on March 5, 1990, but his supervisor, Larry DeNeal, granted his request to extend the term to April 30, 1990. At the end of this term, appellant's appointment was not renewed.

Appellant thereupon filed a complaint with DHR alleging that he had been terminated as the culmination of a pattern of discrimination by Mr. DeNeal on the basis of his height (appellant is 5'4" tall). The pattern allegedly began after appellant gave testimony in an unrelated discrimination proceeding that concerned a coworker. On September 30, 1993, DHR issued an Order finding that DHS had discriminated against appellant because of his personal appearance and in retaliation for his testimony, and ordered reinstatement, back pay, and other relief. On DHS's appeal to the City Administrator, however, the latter reversed DHR's decision, concluding that the pivotal finding by DHR—that "four other staffers" but not appellant had "had their term appointments renewed and after June 30, 1990 were reappointed and reassigned to other projects[,] continuing their employment with [DHS]"—was "unsupported by the record and ... clearly erroneous." Because the project for which appellant had been hired "was not able to secure funding past April 30, 1990," the City Administrator concluded, appellant's

> term was allowed to expire automatically without renewal. The natural expiration of a term appointment is not ... a "termination" action.... Therefore, there is no basis for which to credit the claim that [DHS] acted unlawfully.[2]

* *Associate Judge* FERREN was a member of the panel that heard oral argument. Thereafter he recused himself from the case, and Judge Reid was chosen by lot to replace him.

1. We reject appellant's arguments that DHS's appeal to the City Administrator was untimely, and that the Department of Human Rights erred in failing to enter a "default" judgment against DHS as a result of its delay in responding to the administrative complaint. As explained *infra,* note 5, we also reject the argument that the City

Administrator relied improperly on a memorandum containing a so-called offer of settlement.

2. The City Administrator further noted that appellant "did not apply for any other available positions with [DHS], as did some other employees working on the AIDS project, either during or after his appointment." The so-called Clayborne Memorandum on which the City Administrator relied, *see infra,* indicated that of the four other persons hired with appellant who had remained with DHS, one returned to a former

## II.

At oral argument in this court,[3] appellant all but conceded that if in fact the contract and grant governing the AIDS project under which he was hired expired on June 30, 1990, rather than June 30, 1991, his claim of disparate treatment would have no merit.[4] As appellant stated at argument, it is "really a question of dates." He contends, however, that two documents in the record establish that the AIDS contract was extended for a year to June 30, 1991, thus supporting DHR's finding that he was treated differently (and impermissibly so) from four other staffers who had their term appointments extended. Appellant cites a memorandum from DHS Equal Employment Opportunity Officer Verna E. Clayborne to DHR acknowledging that "the AIDS Demonstration Project grant ... expired on June 30, 1991, after an extension from April 30, 1990 had been twice granted." A related letter from the Associate Director of DHR to appellant transmitting the agency's settlement offer similarly treats "June 30, 1991" as the "date when [Dr. Coleman's] contract [i.e., presum-

ably, the AIDS Demonstration contract] ended."[5]

The District of Columbia argues, by contrast, that the dates in these documents are simply mistaken, because all of the other evidence of record[6] demonstrates that the funding contract expired on June 30, 1990. Indeed, DHR itself stated in its Order that "[t]he grant expired on June 30, 1990," which is consistent with (among other things) the finding in two memoranda prepared by EEO Representative Bernardine Booker Brown (dated August 26, 1991, and September 28, 1992) stating, respectively, that "the project (AIDS Community Outreach Demonstration) was extended through June 30, 1990" and "[t]he actual date of expiration of the AIDS/IV Drug Abuse Community Outreach Demonstration Project was June 30, 1990," the project having been "granted an extension from the original expiration date of April 30, 1990."

It appears to us that neither DHR nor the City Administrator focused precisely on this conflict in the evidentiary record concerning the expiration date of the grant and contract

position with the agency, one applied for and received a job under a different authorization, and two stayed on temporarily to complete the "winding-down" of the AIDS project. One of these two, the director of the project, then "applied and was hired for another position with [DHS] after a break in service."

**3.** The Superior Court, on appeal, sustained the City Administrator's decision.

**4.** Contrary to a bare suggestion by appellant at oral argument, if the only issue of fact were whether the AIDS project (and funding) was extended from April 30 (when his job terminated) to June 30, *1990*, we would have no difficulty sustaining the City Administrator's determination that his discharge at the expiration of his term appointment was not the product of unlawful discrimination or retaliation.

**5.** The so-called Clayborne Memorandum and the Associate Director's letter refer in part to an offer of settlement made by DHS to appellant. In his brief, appellant challenges the City Administrator's reliance on another portion of the Clayborne Memorandum summarizing the employment history of all persons, like Dr. Coleman, hired under the AIDS grant. *See note 2, supra.* At oral argument, however, appellant's counsel greatly undercut this argument by heavily relying on the representations in the memorandum con-

cerning the asserted extension of the grant to June 30, 1991. In any event, the City Administrator's reliance on portions of the memorandum *other* than the terms of the settlement offer falls within this court's repeated holding that "when evidence of a settlement offer is introduced not as an admission of liability or to establish the amount of damages ..., the traditional rule of inadmissibility [of settlement offers] is inapplicable." *1010 Potomac Assocs. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 211 (D.C.1984) (citation omitted). Here, the Clayborne Memorandum was not offered for either of those purposes. Moreover, the "exclusionary rule [for settlement offers] ... is for the offeror's benefit." *Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 312 n. 5 (D.C.1984). It was the District here—the offeror—which relied on the memorandum before the City Administrator (who made the memorandum part of the evidence is unclear); and, as stated, the District did so only with respect to a part of the memorandum that made no reference to the settlement offer or any admitted facts underlying it. *See* JOHN W. STRONG, 2 MCCORMICK ON EVIDENCE § 266, at 196 (4th ed. 1992) ("The exclusionary rule is designed to exclude the offer of compromise only when it is tendered as an admission of the weakness of the offering party's claim or defense, not when the purpose is otherwise.").

**6.** As appellant requested a summary determination of his claim by DHR, there was no live testimony.

under which appellant was hired. The reason that date is critical is because a June 1990 termination date for the contract would cast serious doubt upon the correctness of DHR's legal conclusion that appellant was terminated for discriminatory reasons. That is to say, the fact that (as DHR found) other staffers hired with appellant continued to work for DHS on "other projects" after the AIDS project ended would seem to be beside the point: there is no evidence of record that appellant applied for appointment to those projects or that any position comparable to the one of clinical psychologist for which he had been hired was available once the grant expired. Therefore, because of the key importance of the timing issue to resolution of appellant's claim of unlawful discrimination, we must remand the record to DHR for specific findings with respect to when the AIDS contract and project expired. DHR shall make those findings as expeditiously as possible and transmit them to us.[7]

*So ordered.*

---

7. Since the decision of the City Administrator in this case, the rules permitting appeal to the Office of the City Administrator have been re- pealed. *See* 43 D.C.Reg. 6569 (December 13, 1996).